UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| KAREN SUE LUTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:17-cv-00087-JTM-JEM |
| | ) | |
| LAFAYETTE INSTRUMENT COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**Lafayette Instrument Company, Inc.'s
Answer and Defenses to Plaintiff's Complaint**

Defendant, Lafayette Instrument Company, Inc. ("Lafayette Instrument"), by counsel, for its Answer to Plaintiff's Complaint, states:

1. Plaintiff is Karen Sue Luttrell, a qualified employee of the Defendant who at all times material to this Complaint was over the age of forty (40). Plaintiff contends that while employed by the Defendant she was discriminated and retaliated against on the basis of her age and further retaliated against on the basis of her gender following complaints of sexual harassment/hostile work environment, in violation of the rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII").

**Answer:** Lafayette Instrument admits that Plaintiff was over the age of forty (40) at all times relevant to her Complaint ("Complaint"). Lafayette Instrument also admits that the Complaint purports to state claims for alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* Lafayette Instrument denies any other allegations

in paragraph 1 of the Complaint and, more specifically, denies that it violated any state or federal laws.

2.      Defendant is Lafayette Instrument Company, Inc., a company doing business at 3700 Sagamore Parkway North, Lafayette, IN 47904, with registered agent Jennifer Rider, 3700 Sagamore Parkway North, Lafayette, IN 47904.   Defendant is an "employer" for the purposes of the ADEA and Title VII.

**Answer:**   Lafayette Instrument admits the allegations in paragraph 2 of the Complaint.

3.      Plaintiff filed a Charge of Discrimination with the EEOC on or about February 24, 2017 (attached hereto, incorporated herein, and made a part hereof as Exhibit "A"), and the EEOC issued its Dismissal and Notice of Rights on September 27, 2017 (attached hereto and made a part hereof as Exhibit "B").   Plaintiff has exhausted her administrative remedies and all jurisdictional prerequisites have been met for the filing of this lawsuit.

**Answer:**   Lafayette Instrument admits only that Plaintiff filed a Charge with the EEOC on or about February 24, 2017 and that a Dismissal and Notice of Rights was issued on or about September 27, 2017. To the extent that paragraph 3 of the Complaint states any legal conclusions, no response is required; therefore, any such conclusions are denied. Lafayette Instrument denies any other allegations in paragraph 3 of the Complaint and, more specifically, denies that it violated any state or federal laws.

4.      Plaintiff worked for the Defendant for over five years from 2011 until her wrongful termination on or about September 12, 2016.   At the time of her unlawful separation from employment Plaintiff was a Polygraph Division Sales Representative.

>**Answer:**   Lafayette Instrument admits that Plaintiff worked as a Polygraph Division Sales Representative. Lafayette Instrument denies that Plaintiff was an employee for "five years" because she worked as an independent contractor for Lafayette Instrument for several years before becoming an employee. Lafayette Instrument also denies that Plaintiff had an "unlawful separation." Lafayette Instrument denies any other allegations in paragraph 4 of the Complaint, and, more specifically, denies that it violated any state or federal laws.

5.    In October 2015, Plaintiff reported sexual harassment by the company Vice President, Chris Fausett.  Ultimately, the complaint was resolved by Defendant in March 2016 when Fausett was asked to (and did) resign his position, and Plaintiff received monetary compensation.

>**Answer:**   Lafayette Instrument admits that Plaintiff submitted allegations of sexual harassment against Fausett sometime around October, 2015. Lafayette Instrument also admits that Fausett resigned his position and that the claim was resolved by confidential agreement in March, 2016. Lafayette Instrument denies any other allegations in paragraph 5 of the Complaint and, more specifically, denies that it violated any state or federal laws.

6.    Fausett was replaced as company VP by Steve Rider.  By information and belief, Rider and Fausett were close friends, and Fausett chose Rider to step in as his replacement.

>**Answer:**   Lafayette Instrument admits that Rider replaced Fausett. Lafayette Instrument denies that Rider and Fausett were close friends or that Fausett chose Rider to replace him. Lafayette Instrument denies any other allegations in paragraph 3 of the Complaint.

7. From the time that Rider became company VP, Plaintiff's requests to Rider for job assistance were often ignored or disregarded. This made it difficult for Plaintiff to effectively and/or timely respond to customer questions or requests. When Plaintiff addressed concerns regarding this issue with Rider, she was reprimanded and told that Rider was overloaded with work because Fausett was gone.

**Answer:** Lafayette Instrument denies that Rider "often ignored or disregarded" Plaintiff and denies the Rider "reprimanded" Plaintiff for raising concerns about Rider. Lafayette Instrument denies any other allegations in paragraph 7 of the Complaint.

8. Over the remainder of the time Plaintiff was employed by Defendant, she experienced several other retaliatory behaviors by Defendant such as: having duties she previously handled transferred to other employees; being criticized for the color shirt and type of name tag she wore at a seminar even though she had permission to wear them; she was no longer asked to represent the company at seminars she had attended in previous years; having sales inquiries directed away from her e-mail into a generic e-mail to which she had no access; being excluded from company functions; being asked to arrive at a seminar one day later than other employees; and being excluded from reports of software bugs when new software was released.

**Answer:** Lafayette Instrument denies that it took any retaliatory actions against Plaintiff. Lafayette Instrument admits that Plaintiff was reprimanded for her failure to conform her attire with other employees at conventions, but denies that she had permission in advance to deviate from standard attire. Lafayette Instrument also admits that it asked another representative to attend a seminar Plaintiff had previously attended, but states that this was for a cost savings because the employee lived on the West Coast nearer the seminar and

4

had lower travel and accommodation costs. Lafayette Instrument admits that it used one "generic" email for all sales inquiries, but states that this applied to all employees. Lafayette Instrument denies the other allegations in paragraph 8 of the Complaint, and, more specifically, denies that it violated any state or federal laws.

9. Prior to her termination, Plaintiff was told by Rider on several occasions that she was working too much, that she appeared tired, and that she was one year older than the company president's mother.

**Answer:** Lafayette Instrument denies that Rider told Plaintiff she "appeared tired" or that she was one year older than the Company President's mother. Lafayette Instrument denies the other allegations in paragraph 9 of the Complaint.

10. Following Plaintiff's complaint of sexual harassment, and prior to her termination, Plaintiff's work was increasingly scrutinized. For example, Plaintiff was reprimanded for not sharing technical support issues and how they were resolved with coworkers, even though coworkers were not required to share similar information with her; Plaintiff was reprimanded for working after hours and weekends even though she was a salaried employee, when previous to her complaints of sexual harassment she was praised for her extra efforts and recognized for going "above and beyond" at national seminars; and she was reprimanded for giving her personal phone number and email address to clients even though those had previously been listed on the company's website and her company issued business cards.

**Answer:** Lafayette Instrument admits that Plaintiff was reprimanded, but states that she was reprimanded for her rude and abusive behavior toward her coworkers at Lafayette

Instrument. Lafayette Instrument denies that Plaintiff's work was "increasingly scrutinized" after her complaint of sexual harassment. Lafayette Instrument denies any other allegations in paragraph 10 of the Complaint and, more specifically, denies that it violated any state or federal laws.

11. When Plaintiff learned in September 2016 that another coworker had complained of sexual harassment, and that Rider addressed the complaint immediately, Plaintiff confronted Rider and told him she was displeased with how her own complaint was not handled appropriately for months. Rider became upset and walked away in the middle of the conversation.

**Answer:** Lafayette Instrument denies that Plaintiff's complaint of harassment was "not handled appropriately for months," and further states that Plaintiff's complaint of harassment was addressed immediately and completely resolved by agreement by March, 2016. Lafayette Instrument admits that Plaintiff inappropriately asked Rider about a confidential personnel matter involving another employee and that Rider refused to discuss that personnel matter with her and ended the conversation. Lafayette Instrument denies that Rider "became upset and walked away" from the conversation. Lafayette Instrument is without sufficient information to either admit or deny the other allegations in paragraph 11 of the Complaint and therefore denies the same.

12. The following day, on or about September 8, 2016, approximately two (2) days after Plaintiff confronted Rider about how her own complaint of sexual harassment was not handled properly, Plaintiff was given a Notice of Investigatory Leave and instructed to cease all

work and communication with clients.  Four (4) days later, Plaintiff was notified that she was terminated.

> **Answer:**   Lafayette Instrument states that Plaintiff was placed on investigatory leave but states that it occurred on or about September 7, 2016. Further, Lafayette Instrument states that the investigatory leave only occurred after Lafayette Instrument learned that Plaintiff had violated confidentiality and nondisclosure agreements with Lafayette Instrument and that she had committed several other violations of the company's employee handbook. Lafayette Instrument admits that Plaintiff's employment was terminated for a number of nondiscriminatory and nonretaliatory reasons on or about September 12, 2017. Lafayette Instrument denies the other allegations in paragraph 12 of the Complaint and denies it violated any state or federal laws.

13.     The proffered reasons for Plaintiff's termination were, among other things, "rude, discourteous, or unprofessional behavior," and "insubordination."

> **Answer:**   Lafayette Instrument admits the allegations in paragraph 13 of the Complaint and states that the reasons also included divulging confidential information and unprofessional conduct which adversely affected the Company.

14.     Plaintiff contends that the proffered reasons for her termination were false and pretextual, and in reality she was discriminated against and retaliated against on the basis of her age and further retaliated against on the basis of her gender following complaints of sexual harassment/hostile work environment, in violation of her federal rights under the ADEA and Title VII.

**Answer**:  Lafayette Instrument denies that the reasons for the termination of Plaintiff's employment were pretextual, and instead states they were legitimate, nondiscriminatory and nonretaliatory. Lafayette Instrument denies any other allegations in paragraph 14 of the Complaint and, more specifically, denies that it violated any state or federal laws.

15.   The Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of her job and job related benefits including income, and subjected her to inconvenience, emotional distress, mental anguish, embarrassment, and other damages and injuries.   Plaintiff is entitled to seek compensatory damages.

**Answer**:  Lafayette Instrument denies the allegations in paragraph 15 of the Complaint and, more specifically, denies that it violated any state or federal laws.

16.   Further, Defendant's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights under the ADEA and Title VII.   The Plaintiff is entitled to seek liquidated and/or punitive damages.

**Answer**:  Lafayette Instrument denies the allegations in paragraph 16 of the Complaint and, more specifically, denies that it violated any state or federal laws.

WHEREFORE, Plaintiff respectfully requests judgment against the Defendant for compensatory damages, liquidated damages, punitive damages, reasonable attorney's fees and costs and for all other just and proper relief in the premises.

**Answer**:  Lafayette Instrument denies that Plaintiff is entitled to any relief whatsoever.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

**Answer:**   Plaintiff has requested a trial by Jury, and no response is therefore required.

**DEFENSES**

Lafayette Instrument Company, Inc., by counsel, pursuant to Fed. R. Civ. P. 8(c), and subject to further investigation and discovery, hereby asserts the following defenses in this matter:

1. Plaintiff's claims are barred, in whole or in part, to the extent they fail to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred in whole or in part to the extent she failed to exhaust or otherwise comply with statutory and administrative prerequisites and/or remedies, including, but not limited to, any such requirements under the ADEA or Title VII.

3. To the extent Plaintiff failed to diligently seek other employment or otherwise mitigate her damages, her alleged right to recovery is barred in whole or in part by her failure to mitigate any alleged damages.

4. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and/or the equitable doctrine of laches, and unclean hands.

5. All actions regarding Plaintiff's employment were taken, made, and done in good faith and in compliance with state and federal laws, with uniform application of Lafayette Instrument's legitimate and non-discriminatory policies and practices, and were not based on any unlawful consideration or otherwise the result of any unlawful motive.

6. Lafayette Instrument terminated Plaintiff's employment for legitimate, nondiscriminatory and nonretaliatory reasons.

7. Plaintiff is not entitled to punitive damages because Lafayette Instrument has not acted with malice or reckless disregard to Plaintiff's right and Lafayette Instrument has acted at all times with good faith efforts to comply with all laws prohibiting discrimination.

8. Plaintiff is not entitled to liquidated damages because Lafayette Instrument has not acted with malice or reckless disregard to Plaintiff's right and Lafayette Instrument has acted at all times with good faith efforts to comply with all laws prohibiting discrimination.

9. Plaintiff has not suffered any damages for which she is entitled to relief.

10. Any claims arising more than three hundred (300) days before Plaintiff filed a Charge with the Equal Employment Opportunity Commission alleging those claims are time-barred.

11. Plaintiff's claims are barred, in whole or in part, to the extent her claims are outside the scope of her Charge of Discrimination.

12. Lafayette Instrument's alleged acts or failures to act were not the cause or proximate cause of Plaintiff's alleged damages.

13. To the extent that Plaintiff's claims are barred by the doctrine of after-acquired evidence, said doctrine is pled as a defense to Plaintiff's claims against Lafayette Instrument.

14. Plaintiff is not entitled to a jury trial on issues where there is no federal right to a jury trial, including equitable issues and relief.

15. To the extent that Plaintiff's claims are barred by waiver, estoppel, justification, fraud, and/or Plaintiff's own actions, inactions and/or omissions, such doctrines are pled as defenses to Plaintiff's action.

16.     Lafayette Instrument asserts all defenses available pursuant to Title VII and federal common law as may be applicable to the facts asserted or proved in this litigation.

17.     Plaintiff's claims are barred, in whole or in part, by her own misconduct.

18.     Lafayette Instrument is continuing its investigation and study of all facts and circumstances of the subject matter of the Complaint, and accordingly, reserves the right to amend, modify, revise or supplement its answer, and to plead such further defenses and take such further actions as it may deem proper and necessary in its defense upon the completion of such investigation and study.

**WHEREFORE**, Defendant Lafayette Instrument Company, Inc. having fully answered Plaintiff's Complaint, prays that judgment be entered in its favor and against Plaintiff, or alternatively, that Plaintiff's claims be dismissed with prejudice, and that Defendant be permitted to recover its costs incurred herein, including reasonable attorney's fees incurred in defense of this action and for all other just and proper relief.

FROST BROWN TODD LLC

By: */s/Alexander P. Will*
    Heather L. Wilson, #20432-41
    Alexander P. Will, #23474-49
    Attorneys for Lafayette Instrument
    Company, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2017, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel/parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Lori W. Jansen
Christopher C. Myers & Associates
809 S. Calhoun St., Suite 400
Fort Wayne, IN   46802
ljansen@myers-law.com

                                              */s/Alexander P. Will*
                                              Alexander P. Will

FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Phone: (317) 237-3800
Fax: (317) 237-3900
hwilson@fbtlaw.com
awill@fbtlaw.com

LR00005.0646152     4816-9505-8518v3